UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
99 OCT 26 PM 12: 11
U.S. DISTRICT COURT
N.D. OF ALABAMA

VOYCE ANN LANSDELL, PELMER L.,  )
LANSDELL, SR.,                   )
                                 )
              Plaintiffs,        )
                                 )
vs.                              ) Civil Action No. CV-99-S-2110-NE
                                 )
AMERICAN HOME PRODUCTS           )
CORPORATION, WYETH-AYERST        )
LABORATORIES COMPANY,            )
BARNETT DRUG STORE,              )
                                 )
              Defendants.        )

ENTERED

OCT 2 6 1999

**MEMORANDUM OPINION**

This action is before the court on the motion to dismiss filed

by Alten Drugs, Inc., an entity doing business as (and described in

plaintiffs' complaint as) "Barnett Drug Store" (hereinafter

"Barnett Drugs") (Doc. No. 2), and plaintiffs' motion to remand

(Doc. No. 8). Upon consideration of the motions, pleadings,

briefs, and oral arguments of counsel, the court finds that Barnett

Drugs' motion is due to be granted and plaintiffs' motion denied.

This action was removed from the Circuit Court of Lauderdale

County, Alabama on August 12, 1999, by two of the three defendants

named in plaintiffs' complaint, American Home Products Corporation

("American Home") and Wyeth-Ayerst Laboratories Company ("Wyeth

Labs"). Defendant Barnett Drugs did not join in the removal; even

so, both removing defendants contend, as Barnett Drugs asserts in

its motion to dismiss, that it was unnecessary for Barnett Drugs

to join in the removal, because that defendant was fraudulently

joined in this action to defeat diversity jurisdiction.

The crux of both motions before the court is the same:

specifically, each requires this court to decide whether a pharmacy

may be held liable under Alabama law for correctly dispensing a

lawful prescription drug in accordance with a valid prescription

written by a licensed physician. The court finds that it cannot,

as such claims are barred by the so-called "learned intermediary

doctrine."[1]

## I. STANDARDS OF REVIEW

A court may dismiss a complaint for failure to state a claim

only if it is clear that no relief can be accorded plaintiffs under

any set of facts that could be proven consistent with the

allegations in the complaint. *See Hishon v. King & Spalding*, 467

U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright

v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not ...

[dismiss] unless it appears beyond doubt that the plaintiff can

---

[1] *See* Black's Law Dictionary 898 (7th ed. 1999) (defining the learned
intermediary doctrine as "[t]he principle that a prescription-drug <u>manufacturer</u>
fulfills its duty to warn of a drug's potentially harmful effects by informing
the prescribing physician, rather than the end-user, of those effects" (emphasis
supplied)). As discussed *infra*, this court expands that doctrine to encompass
pharmacists.

2

prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss thus are "exceedingly low." *Williams v. City of Montgomery*, 21 F. Supp. 2d 1360, 1363 (M.D. Ala. 1998).

In this case, however, Barnett Drugs has submitted the affidavit of David Frye, a registered pharmacist and manager of its store in Rogersville, Alabama. If matters outside the pleadings are presented to and considered by the court when ruling upon a Rule 12(b)(6) motion, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b); *see also*, e.g., *Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D.D.C. 1986) (Richey, J.). The rationale behind such a principle is that the conversion of a motion to dismiss to a motion for summary judgment makes the court's inquiry fact specific. Therefore, the nonmovant may be accorded an opportunity to demonstrate the existence of genuine issues of material facts, if there be any. *But see Denis v. Liberty Mutual Insurance Co.,* 791 F.2d 846, 850 (11th Cir. 1986) (recognizing an

3

exception to the requirement that the court afford plaintiff notice of its intent to convert and an opportunity to supplement the record); *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir. 1985) (same).

The instant case presents an anomalous, if not unusual circumstance, however. Plaintiffs unequivocally adopted the affidavit of David Frye in support of their motion to remand. (*See* Doc. No. 9 (plaintiffs' "notice of filing affidavit of David Frye") reading: "Comes now the plaintiffs, who give notice of the filing of the Affidavit of David Frye as Exhibit 'B' to their brief in support of [their motion to] remand.") In so adopting the affidavit, plaintiffs have placed uncontested facts before this court, thereby allowing the court to rule upon Barnett Drugs' motion as a matter of law, rather than a matter of fact. *Cf. Property Management*, 752 F.2d at 605-607.[2]

Moreover, because this case also involves simultaneous

---

[2] The Eleventh Circuit held in *Property Management* that the trial court did not err in converting a 12(b)(6) motion into one for summary judgment, as the nonmovant:

> is estopped from denying the propriety of the conversion because it submitted its own copy of the [evidence] to the court and, thus, affirmatively sought to effect the conversion about which it now complains. ... By submitting this [evidence], the appellant rendered its objections to consideration of the [evidence] ... meaningless, and, indeed, sought such consideration.

*Property Management*, 752 F.2d at 605-607.

4

consideration of plaintiffs' motion to remand, the court must consider pertinent subject matter jurisdiction principles. Fundamentally, the United States' district courts are forums of limited jurisdiction. *E.g., Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092 (11th Cir. 1994). As such, they posses the power to hear only those cases authorized by the Constitution or Congress. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377, 114 S.Ct. at 1675 (citation omitted); *see also Burns*, 31 F.3d at 1095 ("[I]n deciding a motion to remand where the plaintiff and defendant disagree on issues of jurisdiction, questions or doubts are to be resolved in favor of returning the matter to state court.").

A federal district court possesses original jurisdiction over all cases between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Although the statute does not specify complete diversity of citizenship, it has long been the rule that diversity jurisdiction requires all plaintiffs to be diverse from

5

all defendants. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

The Supreme Court also has recognized, however, that a defendant's "right to removal cannot be defeated by a fraudulent joinder of a residential defendant having no real connection to the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *see also Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir. 1983).

In the Eleventh Circuit, joinder may be deemed "fraudulent" in three circumstances.

> The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. ... The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. ... [A third situation arises] where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability[,] and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citations omitted).

Where a party alleges fraudulent joinder, that party bears the burden of proving its allegations by clear and convincing evidence. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.

6

1989)); *Coker*, 709 F.2d at 1440; *Yawn v. Southern Railway Co.*, 591 F.2d 312, 316 (5th Cir.), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979).[3] Although the court properly looks to the complaint itself to determine whether there has been a fraudulent joinder, the court also may resort to submissions outside the pleadings, such as deposition testimony and affidavits, when making its determination. *See Cabalceta*, 883 F.2d at 1561; *Coker*, 709 F.2d at 1440. All allegations and submissions must be viewed in the light most favorable to plaintiffs, who chose the state forum and oppose removal. *Id.* Thus, if there is even a possibility that a state court would find that plaintiffs' complaint states a valid claim against a resident defendant, the federal court must find that the joinder was proper and remand the case to the state court. *Id.* at 1440-1441.

## II. FACTUAL BACKGROUND

The following facts are gleaned from the pleadings and affidavit submitted to the court. Plaintiffs, Voyce Ann Lansdell ("Mrs. Lansdell") and her husband, Pelmer L. Lansdell, Sr. ("Mr. Lansdell"), filed a complaint against defendants American Home, Wyeth Labs, and Barnett Drugs in the Circuit Court of Lauderdale

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

7

County, Alabama on July 14, 1999.  They allege that Mrs. Lansdell
suffered injuries as a result of ingesting dexflenfluramine
hydrochloride, a drug that is better known by its brand-name,
"Redux."

Although plaintiffs' complaint is no model of clarity, the
court has ascertained that Barnett Drugs is directly named in only
three of its seven counts: *i.e.*, Count III, alleging that Barnett
Drugs "negligently or wantonly developed, manufactured, marketed,
and/or sold" Redux in violation of the Alabama Extended
Manufacturers Liability Doctrine ("AEMLD"); Count IV, alleging that
Barnett Drugs "negligently or wantonly failed to warn ... of the
dangers" of using Redux; and Count V, alleging that Barnett Drugs
breached express and/or implied warranties that Redux was
"reasonably fit and suitable for the purpose for which it was
intended to be used."   (Plaintiffs' complaint at 7-9.)[4]

As previously observed, both Barnett Drugs, in support of its
motion to dismiss, and plaintiffs, in support of their motion to
remand, have submitted the affidavit of David Frye, a registered
pharmacist and manager of the Barnett Drugs store which dispensed

---

[4] By implication Barnett Drugs arguably is a defendant liable under Count
VI of plaintiffs' complaint, in which Mr. Lansdell asserts a claim for loss of
his wife's consortium.  Because that claim is derivative, and viable only if Mrs.
Lansdell succeeds on her direct claims against Barnett Drugs, this count need not
detain the court any longer.

8

the contested medication to Mrs. Lansdell. Mr. Frye avers as

follows:

> On October 8, 1996, plaintiff Voyce Ann Lansdell brought a prescription to Barnett Drugs from Dr. Lyman Mitchell, Jr. at Florence Clinic, L.L.C., Florence, Alabama, to be filled. The prescription was for 60 Redux 15 mg. capsules. ... The prescription authorized five refills. ... The prescription was filled exactly as prescribed by Dr. Mitchell. Ms. Lansdell returned to Barnett Drugs on five subsequent occasions for a refill of this prescription. On each of these occasions, the prescription was filled strictly in accordance with the instructions of Ms. Lansdell's prescribing physician.

> On April 5, 1997, Ms. Lansdell brought a second prescription for Redux from Dr. Mitchell to Barnett Drugs to be filled. ... The prescription was, like the first prescription, for 60 Redux 15 mg. capsules. The prescription was filled on that occasion exactly as prescribed by Dr. Mitchell. This prescription also called for five refills. Ms. Lansdell returned to Barnett drugs on three occasions for a refill. On each of these occasions, the prescription was filled strictly in accordance with the instructions of Ms. Lansdell's prescribing physician.

> The Redux medication prescribed by Ms. Lansdell's physician was not compounded in any way and there was nothing added to or taken from the medication as it was received from its manufacturer prior to the time it was dispensed to Ms. Lansdell as prescribed by her physician. The prescription was not changed in any way from the manner in which it was written by Ms. Lansdell's physician and the Redux medication given to Ms. Lansdell at the time her prescriptions were filled was not in any way different from the Redux medication prescribed by Ms. Lansdell's physician.

> Barnett Drugs did not manufacture the medication. Barnett Drugs is a pharmacy only. Barnett Drugs did not develop or test the medication. Barnett Drugs is in the

9

business of distributing finished products and had no
knowledge of any alleged defective condition with respect
to the Redux medication and did not contribute to any
defective condition.   Barnett Drugs has no knowledge of
this  defective  condition  superior  to  that  of  Ms.
Lansdell's prescribing physician or the ultimate user of
the medication.   Barnett Drugs made no express or implied
warranties to Ms. Lansdell with regard to the Redux
medication.

(David Frye's Affidavit at 1-3.)

### III. DISCUSSION

### A.   Diversity of Citizenship

The removing defendants candidly admit that Barnett Drugs is

an Alabama citizen and, thus, complete diversity is not present on

the face of plaintiffs' complaint.   They argue, however, that this

court should disregard Barnett Drugs' citizenship, because it was

fraudulently joined to prevent removal.   Among other things, they

contend (as does Barnett Drugs in its motion to dismiss) that all

of plaintiffs' claims are barred by the learned intermediary

doctrine.[5]

---

[5] During oral argument, counsel for Barnett Drugs also argued that
plaintiffs' claims for failure to warn (Count IV) and breach of warranty (Count
V) were subsumed into their AEMLD claim (Count III).   The seeds of such an
argument fell upon receptive ground, as this court previously has held that
claims of negligence, wanton misconduct, and breach of warranty under Alabama law
merge into the so-called "Extended Manufacturers' Liability Doctrine."   See Webb
v. Ashland Chemical, Inc., Civil Action No. CV99-S-0443-NW (N.D. Ala., June 7,
1999 Order) (Smith, J.) (attached as Exhibit "A" to Barnett Drugs' response to
plaintiff's motion to remand).   Upon further consideration of that argument, this
court agrees with Senior United States District Judge Wm. Brevard Hand of the
Southern District of Alabama that failure to warn claims also are subsumed into
the AEMLD.   See Johnson v. General Motors Corporation, Civil Action No. 97-0046-
BH-C (S.D. Ala., July 22, 1997 Order) (Hand, J.) (attached as Exhibit "E" to

10

Barnett Drugs contends that it "did nothing ... other than to dispense a prescription drug ... in accordance with the instructions of the plaintiff's prescribing physician, and, as a consequence[,] can have no liability in this case as a matter of law." (Barnett Drugs' motion to dismiss ¶ 2.)

In response, plaintiffs assert that the learned intermediary doctrine is "a new and undocumented subject in Alabama" (plaintiffs' brief in opposition to Barnett Drugs' motion to dismiss, at 10) that does not bar their claims against Barnett Drugs. (Id., at 7-10.)

The seminal Alabama case discussing the doctrine is *Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301 (Ala. 1984), in which the Alabama Supreme Court adopted the reasoning of the former Fifth Circuit in *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1276 (5th Cir. 1974). The *Stone* court explained the doctrine, as follows:

> We cannot quarrel with the general proposition that where prescription drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent

defendants' notice of removal).

11

in his products. [citation omitted.] Prescription drugs
are likely to be complex medicines, esoteric in formula
and varied in effect. As a medical expert, the
prescribing physician can take into account the
propensities of the drug, as well as the susceptibilities
of his patient. His is the task of weighing the benefits
of any medication against its potential dangers. The
choice he makes is an informed one, an individualized
medical judgment bottomed on a knowledge of both patient
and palliative. Pharmaceutical companies then, who must
warn ultimate purchasers of dangers inherent in patent
drugs sold over the counter, in selling prescription
drugs are required to warn only the prescribing
physician, who acts as a 'learned intermediary' between
manufacturer and consumer.

*Stone,* 447 So. 2d at 1304-1305 (emphasis supplied) (citing *Reyes v.*

*Wyeth Laboratories,* 498 F.2d at 1276).

Although the learned intermediary doctrine as thus defined

operates only to bar certain claims against pharmaceutical

companies manufacturing prescription medications, it has been

expanded by some courts to bar similar claims brought against

pharmacists. *See e.g., McKee v. American Home Products Corp.,* 782

P.2d 1045 (Wash. 1989); *Nichols v. Central Merchandise, Inc.,* 817

P.2d 1131 (Kan. Ct. App. 1991); *Jones v. Irvin,* 602 F. Supp. 399

(S.D. Ill. 1985). The Washington Supreme Court explained why the

doctrine applied equally well in pharmacy cases:

    The relationship between the physician-patient-
    manufacturer applies equally to the relationship between
    the physician-patient and pharmacist. In both
    circumstances, the patient must look to the physician,

12

> for it is only the physician who can relate the
> propensities of the drug to the physical idiosyncrasies
> of the patient.
>
> . . .
>
> Neither manufacturer nor pharmacist has the medical
> education or knowledge of the medical history of the
> patient which would justify a judicial imposition of a
> duty to intrude into the physician-patient relationship.

*McKee*, 782 P.2d at 1050-1051. Moreover, to hold otherwise, would

"require the pharmacist to question the physician's judgment

regarding the appropriateness of each customer's prescription."

*Id.* at 715. Such a policy, inevitably, would wedge the pharmacist

into the relationship between a physician and her or his patient

and, thereby, interfere with ongoing treatment:

> A physician may often have valid reasons for deviating
> from the drug manufacturer's recommendations based on a
> patient's unique condition. The duty which [plaintiff]
> urges would result in the pharmacist second guessing
> numerous prescriptions to avoid liability. This would
> not only place an undue burden on pharmacists, but would
> likely create antagonistic relations between pharmacists
> and physicians.

*Id.* at 1053; *see also Nichols*, 817 P.2d at 1133 (reasoning that

"imposing a duty on the pharmacist would intrude on the doctor-

patient relationship and would force the pharmacist to practice

medicine without a license"). Thus, the Washington Supreme Court

concluded that the learned intermediary doctrine barred claims

against a pharmacy in the following circumstances:

13

> [O]ur holding is narrow.  The pharmacist still has a duty
> to accurately fill a prescription, [citation omitted] and
> to be alert for clear errors or mistakes in the
> prescription.  The pharmacist does not, however, have a
> duty to question a judgment made by the physician as to
> the propriety of a prescription or to warn customers of
> the hazardous side effects associated with a drug, either
> orally or by way of the manufacturer's package insert.

*McKee*, 782 P.2d at 1055.

The Alabama Supreme Court has, by implication, evidenced an intent to expand the doctrine beyond a pharmaceutical company to a pharmacist. *See Stafford v. Nipp*, 502 So. 2d 702 (Ala. 1987). In *Stafford*, the consumer of a prescription drug sued both her physician and the pharmacist who filled her doctor's prescription. 502 So. 2d at 703. Although the Alabama Supreme Court reversed the trial court's order granting summary judgment in favor of the pharmacist on the basis of the learned intermediary doctrine, it did so on the basis of the existence of genuine issues of material fact. *Id.* Specifically, the doctor testified that he only issued plaintiff a six-month prescription, without any refills, but the pharmacist continued to refill the prescription for approximately nine years, and denied that he would have done so in the absence of a current prescription from plaintiff's physician. *Id.* The Alabama Supreme Court concluded from such disputed facts that, because the pharmacist possibly dispensed the prescription without

14

authority from a physician, plaintiff could maintain a claim against the pharmacist. *Id.* at 705. "The manufacture's warnings accompanying the drug at the time of its purchase and sale by the pharmacy do not, as a matter of law, shield the pharmacist from liability based on breach of warranty where the pharmacist continues to fill the prescription <u>without authorization from a doctor</u>." *Id.* (emphasis added).

In the present case, however, plaintiffs have not alleged that Barnett Drugs dispensed Mrs. Lansdell's medication without authorization from, or in a manner inconsistent with, her doctor's prescription. Nor have plaintiffs alleged that Barnett Drugs negligently substituted another drug for the prescribed drug, or dispensed the drug in an excessive dose. Indeed, nowhere in plaintiffs' complaint is it alleged that Barnett Drugs failed to fill Ms. Lansdell's prescription in strict accordance with the doctor's directions. In each of these hypotheticals, plaintiffs could potentially have a claim under the court's holding in *Stafford*, based on the theory that Barnett Drugs committed negligence independent of the pharmaceutical manufacturer or prescribing physician. Even so, plaintiffs have alleged merely that Barnett Drugs can be held responsible "under Alabama law for

15

its role in getting the defective product, Redux, in the hands of its customers like the Lansdell-Plaintiffs." (Plaintiff's motion to remand at 7.) Thus, the precise issue submitted to this court by the allegations of plaintiffs' complaint and the affidavit of David Frye is whether a pharmacy, which correctly fills a prescription in strict accordance with the prescribing physician's directions, can be liable in tort for failing to warn the patient of the possible side effects of the medication and/or for dispensing the drug and, thereby, placing it into the stream of commerce.

The court finds that under the present facts, where the pharmacy's liability is merely derivative, *i.e.*, it was acting in strict accordance with a licensed physician's valid prescription, the pharmacy is protected under Alabama law by the learned intermediary doctrine. *See Harrell v. Wyeth-Ayerst Laboratories, Inc.*, Civil Action No. 98-1194-BH-M (S.D. Ala. February 1, 1999) (Hand, J.) (dismissing claims against pharmacist on the grounds that the learned intermediary doctrine bars "an action against a pharmacist for correctly filling a prescription signed by a medical doctor"); *see also Julie Orr v. Wyeth-Ayerst Laboratories Company*, Case No. CV-98-3000-DIET (Circuit Court of Mobile County, Alabama,

16

August 2, 1999) (Johnston, J.) (dismissing pharmacy defendants in over 150 consolidated diet drug cases on the grounds that such claims were barred by the learned intermediary doctrine).

The court also notes that this conclusion is consistent with the majority of other jurisdictions that have considered this issue and, likewise, have held that the learned intermediary doctrine bars similar actions against pharmacies. *See e.g., Raynor v. Richardson-Merrell,* Inc., 643 F. Supp. 238 (D.D.C. 1986); Ramirez *v. Richardson-Merrell,* Inc., 628 F. Supp. 85 (E.D. Pa. 1986). *See also Murphy v. E.R. Squibb & Sons,* Inc., 710 P.2d 247 (Cal. 1985); *Walker v. Jack Edward Corp.,* 434 S.E.2d 63 (Ga. Ct. App. 1993); *Pysz v. Henry's Drug Store,* 457 So. 2d 561 (Fla. Dist. Ct. App. 1984); *Leesley v. West,* 518 N.E.2d 758 (Ill. App. Ct. 1988); *Ingram v. Hook's Drugs, Inc.,* 476 N.E.2d 881 (Ind. Ct. App. 1985); *Guillory v. Dr. X,* 679 So. 2d 1004 (La. Ct. App. 1996); *Stebbins v. Concord Wrigley Drugs, Inc.,* 416 N.W.2d 381 (Mich. Ct. App. 1987); *Kampe v. Howard Stark Professional Pharmacy,* Inc., 841 S.W.2d 223 (Mo. App. 1992); *Batiste v. American Home Products* Corp., 231 S.E.2d 269 (N.C. Ct. App. 1977); *Ullman v. Grant,* 450 N.Y.S.2d 955 (N.Y. App. Div. 1982); *Coyle v. Richardson-Merrell, Inc.,* 584 A.2d 1383 (Pa. 1991).

17

Because this court finds that plaintiffs' claims against Barnett Drugs are barred by the learned intermediary doctrine and, thus, are due to be dismissed, the court disregards the citizenship of the fraudulently joined defendant for purposes of 28 U.S.C. § 1332. All remaining defendants are completely diverse from plaintiffs and, accordingly, the court finds that defendants have satisfied their burdens with regard to diversity of citizenship.

## B. Procedural Deficiencies in the Removal Petition

Additionally, to the extent that plaintiffs argue this case is due to be remanded on the basis of a procedural deficiency, namely, that Barnett Drugs did not join in the removal petition, the court disagrees, and finds that Barnett Drugs was not required to join in removal because it is a fraudulently joined defendant. *See Woods v. Firestone Tire & Rubber Co.*, 560 F. Supp. 588, 590 (S.D. Fla. 1983) (finding that "nominal or formal parties, unknown defendants and defendants fraudulently joined may be disregarded in determining the removing defendants' compliance with Section 1446(a)") (citing *Tri-Cities Newspapers, Inc. v. Tri-Cities Pressman & Assistants Local 349,* 427 F.2d 325, 326-27 (5th Cir. 1970) (holding that "nominal or formal parties, being neither necessary nor indispensable, are not required to join in the

18

petition for removal")).

## C. Amount in Controversy

Finally, and *sua sponte*, the court notes that plaintiffs failed to allege a specific amount of damages in their prayer for relief. The removing defendants contend that the amount in controversy requirement is satisfied because "[t]he amount in controversy clearly exceeds $75,000, exclusive of interest and costs." (Notice of removal at 5 (emphasis added).)

The burden of proving the requisite amount in controversy rests with the removing defendants. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996); *Bolling v. Union National Life Insurance Co.*, 900 F. Supp. 400, 403 (M.D. Ala. 1995).

Where a plaintiff has specifically claimed less than the jurisdictional amount in her state court complaint, the removing defendant must show to a "legal certainty" that the plaintiff would not recover less than $75,000, if she prevailed. *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

> The rationale is that although a defendant has a right to remove in certain cases, a plaintiff is still master of her own claim. ... Noting an attorney's twin duties to investigate his client's case and be candid with the court, we reasoned that a pleading containing a specific demand of damages and signed by a lawyer was due

19

> deference and a presumption of truth. ... We concluded
> the defendant's burden was a "heavy one" and the legal
> certainty standard was therefore appropriate. ... Any
> lesser burden would impermissibly expand federal
> diversity jurisdiction. ...

*Tapscott*, 77 F.3d at 1356 (citing *Burns*, 31 F.3d at 1095-97).

The rule is different in cases such as this one, however,

where the plaintiff does <u>not</u> claim a specific amount of damages in

her state court complaint.

> Where a plaintiff has made an <u>unspecified demand</u> for
> damages, a lower burden of proof is warranted because
> there is simply no estimate of damages to which a court
> may defer. Nevertheless, a defendant's ability to remove
> a state case to federal court is not unfettered.   The
> proper balance between a plaintiff's right to choose his
> forum and a defendant's right to remove, without
> unnecessarily expanding federal diversity jurisdiction,
> is struck by a preponderance of the evidence standard.
> As the *Gafford* Court stated:
>
> > It does not place upon the defendant the
> > daunting burden of proving, to a legal
> > certainty, that the plaintiff's damages are
> > not less than the amount-in-controversy
> > requirement. Such a burden might well require
> > the defendant to research, state and prove the
> > plaintiff's claim for damages.  On the other
> > end of the spectrum, requiring the defendant
> > to prove that the amount in controversy "may"
> > meet the federal requirement would effectively
> > force the plaintiff seeking remand to prove in
> > rebuttal that only a relatively small amount
> > of damages is legally possible.
>
> *Gafford*, 997 F.2d at 159 (footnote omitted).  Thus, we
> hold where a plaintiff has made an unspecified demand for
> damages in state court, a removing  defendant must prove
> by a preponderance of the evidence that the amount in

controversy more likely than not exceeds the $50,000 [now $75,000] jurisdictional requirement.

*Tapscott*, 77 F.3d at 1357 (citing *Gafford v. General Electric Co.*, 997 F.2d 150 (6th Cir. 1993)).

Here, the amount in controversy is not apparent from the face of plaintiffs' complaint. Rather, plaintiffs merely request "an amount which will adequately compensate plaintiffs for the injuries and damages sustained by them due to the defendants' conduct; and for exemplary damages in an amount which will adequately reflect the wrongfulness of defendants' conduct." (Complaint at 6-11.) Thus, the removing defendants must prove by a preponderance of credible evidence that those demands, if met, more likely than not would yield a recovery in excess of the $75,000 jurisdictional requirement.

Defendants' attempt to meet their burden solely by reliance on the allegations of damage in the complaint falls short of the required quantum of proof, however. *See King v. Wal-Mart Stores, Inc.*, 940 F. Supp. 213, 216 (S.D. Ind. 1996) (remanding slip and fall case where defendant opposed motion to remand by referring solely to plaintiff's allegations in the complaint). On nearly identical facts, the United States District Court for the Southern District of Indiana aptly noted:

21

> Defendant Wal-Mart conclusorily states that Plaintiff's
> allegations themselves may be relied upon as competent
> evidence that the value of Plaintiff's claims exceeds
> $[75,]000. . . . Obviously, Defendant cannot satisfy its
> burden solely through its reliance upon the general
> allegations in Plaintiff's complaint.  Defendant is not
> well served by resting upon the complaint's general
> allegations as evidence of the jurisdictional amount,
> because it is not "competent proof" and, more
> significantly, the value of the stated allegations is at
> the very heart of the dispute.

*King,* 940 F. Supp. at 216-17.

Nevertheless, this court shall not order that the action be remanded *sua sponte.*  The court finds that an amendment to plaintiffs' complaint would serve to clarify an unspecified demand for damages and, in deference to the liberal federal rules regarding amendment of pleadings, justice will best be served by permitting the amendment.

Therefore, if plaintiffs desire to remain in the state forum they originally chose, plaintiffs shall forswear any entitlement to any sum or its equivalent value in excess of $75,000, by amending their complaint to contain such a disclaimer, and they shall accompany that disclaimer with a second motion to remand.

Unless plaintiffs do so on or before November 2, 1999, however, the court will proceed as if it has subject matter jurisdiction and that the removal was not improvident.

22

Plaintiffs should clearly understand that this court will treat the amended complaint as a certification that plaintiffs will neither seek nor accept damages in excess of $75,000 in the state court action.  In the event plaintiffs later seek more, this court will assume jurisdiction upon the filing of another, proper notice of removal by defendants.

### IV. CONCLUSION

Based on the foregoing, the court finds that Barnett Drugs has been fraudulently joined in this action, as there is no possibility that plaintiffs can maintain a claim against that defendant under the learned intermediary doctrine.  Accordingly, Barnett Drugs' motion to dismiss is due to be granted. Additionally, plaintiffs' motion to remand is due to be denied, as complete diversity is present between the remaining parties.  Plaintiffs may file another motion to remand, however, should plaintiffs decide to amend their complaint to clarify their unspecified demand for damages.   An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this $26\overset{th}{}$ day of October, 1999.

United States District Judge

23